FILED
4:17 pm, Jun 22, 2020
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

DAVID COLLINS, )
  Plaintiff, )
 )
 )
v. ) CASE No. 1:20-cv-1698-JMS-TAB
 ) (To be supplied by the Clerk of Court)
 )
GEO GROUP INC., )
  Defendant. )

## COMPLAINT FOR A CIVIL ACTION

### A. Parties

**1. Plaintiff**

Name: David Collins DOC #136767
Address: New Castle Correctional Facility
1000 Van Nuys Rd. - P.O. Box A
New Castle, IN. 47362-1041

**2. Defendants**

Defendant No. 1 - Official Capacity (Rice v. Botts, 2017 U.S. Dist. LEXIS 173972)

Name: Sargeant Nadai
Title: Correctional Sargeant Nadai
Employer: Geo Group, Inc.
Address: 1000 Van Nuys Rd. - P.O. Box E
New Castle, IN. 47362

1

Defendant No. 2 - Official Capacity (Rice v. Butts, 2017 U.S. Dist. LEXIS 173972)

Name: Officer Sturgeon
Title: Correctional Officer
Employer: Geo Group Inc.
Address: 1000 Van Nuys Rd. - P.O. Box E
New Castle, In. 47362

Defendant No. 3 - Official Capacity (Rice v. Butts, 2017 U.S. Dist. LEXIS 173972)

Name: Officer Fowler
Title: Correctional Officer
Employer: Geo Group Inc.
Address: 1000 Van Nuys Rd. - P.O. Box E
New Castle, In. 47362

Defendant No. 4 - Official Capacity (Rice v. Butts, 2017 U.S. Dist. LEXIS 173972)

Name: John Nwannunu
Title: Medical Doctor (MD)
Employer: Wexford, Inc.
Address: 9245 N. Meridian St. Suite 111
Indianapolis, In. 46260

Defendant No. 5 - Official Capacity (Rice v. Butts, 2017 U.S. Dist. LEXIS 173972)

Name: Nurse Practitioner Johnson
Title: Nurse Practitioner (NP)
Employer: Wexford Inc.
Address: 9245 N. Meridian St. Suite 111
Indianapolis, In. 46260

Defendant No. 6 - Official Capacity (Rice v. Betts, 2017 U.S. Dist. LEXIS 173972)

    Name: Jessica Kenakham
    Title: Licensed Practicing Nurse (LPN)
    Employer: Wexford, Inc.
    Address: 9245 N. Meridian St. Suite 111
             Indianapolis, IN. 46260

Defendant No. 7 - Official Capacity (Rice v. Betts, 2017 U.S. Dist. LEXIS 173972)

    Name: Doctor E. Falconer
    Title: Health Services Administrator (HSA)
    Employer: Wexford, Inc.
    Address: 9245 N. Meridian St. Suite 111
             Indianapolis, IN. 46260

## B. Basis For Jurisdiction

1. The Plaintiff brings forth this suit against non-governmental entities contracted by the state under 42 U.S.C. § 1983;

2. The Plaintiff asserts that the following constitutional and/or statutory rights of the Plaintiff were violated by state officials:

    i. Indiana Constitution Article 1, Section 15
    ii. Indiana Constitution Article 1, Section 16
        (Naked City v. State, 460 N.E. 2d 151, 1984 Ind. (Ind. Ct. App. 1984))
    iii. Indiana Code 11-10-3-2(c)
    iv. United States Constitution Amendment 8
        (Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed. 2d 251, app. after remand, 788 F.2d 650 (9th Cir. 1986))

3

3. The Plaintiff alleges the following as to how each Defendant under color of any statute, ordinance, regulation, custom, of any State or Territory:

   i. Defendant No. 1 - Correctional Sargent Nadai

   Correctional Sargent Nadai ("Nadai") is an employee of the GEO Group, Inc. ("GEO"), a subsidy of the Indiana Department of Correction ("IDOC") contracted to operate the New Castle Correctional Facility ("NCCF"). As an employee of a company subsidized by the State of Indiana to operate a correctional facility of the IDOC, correctional officers of GEO are subject to the same treatment and standard-of-law as correctional officers employed directly by the State of Indiana, IDOC, in accordance with Indiana Code 11-10-7-4. Therefore, Defendant Nadai is held to the standard of Indiana Constitution Article 1, Section 15 (Unnecessary rigor for incarcerated individuals); Indiana Constitution Article 1, Section 16 (Cruel and unusual punishment); Indiana Code 11-10-3-2 (Provision of medical care); and the Eighth Amendment of the United States Constitution (Cruel and Unusual Punishment through the Fourteenth Amendment - Robinson v. State of California, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962)).

   ii. Defendant No. 2 - Correctional Officer Sturgeon

   Correctional Officer Sturgeon ("Sturgeon") is an employee of GEO, a subsidy of the IDOC contracted to operate NCCF. As an employee subsidized by the State of Indiana to operate a correctional facility of the

IDOC, correctional officers of GEO are subject to the same treatment and standard-of-law as correctional officers employed directly by the State of Indiana, IDOC, in accordance with Indiana Code 11-10-7-4. Therefore, Defendant Sturgeon is held to the standard of Indiana Constitution Article 1, Section 15 (Unnecessary rigor for incarcerated individuals); Article 1, Section 16 of the Indiana Constitution (Cruel and unusual punishment); Indiana Code 11-10-3-2 (Provision of medical care); and the Eighth Amendment of the United States Constitution (Cruel and unusual punishment through the Fourteenth Amendment - Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed. 2d 758 (1962)).

iii. Defendant No. 3 - Correctional Officer Fowler

Correctional Officer Fowler ("Fowler") is an employee of GEO, a subsidy of the IDOC contracted by the State of Indiana to operate NCCF. As an employee of a company subsidized by the State of Indiana to operate a correctional facility of the IDOC, correctional officers of GEO are subject to the same treatment and standard-of-law as correctional officers employed directly by the State of Indiana, IDOC, in accordance with Indiana Code 11-10-7-4. Therefore, Defendant Fowler is held to the standard of Indiana Constitution Article 1, Section 15 (Unnecessary rigor for incarcerated individuals); Indiana Constitution Article 1, Section 16 (Cruel and unusual punishment); Indiana Code 11-10-3-2 (Provision of medical care); and the Eighth Amendment of the United States Constitution (Cruel and unusual punishment

through the Fourteenth Amendment – <u>Robinson v. State of California</u>, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962)).

iv. Defendant No. 4 – John Nwannunu (MD)

John Nwannunu ("Nwannunu") is an employee of Wexford, Inc. ("Wexford"), a subsidy of the IDOC contracted by the State of Indiana to provide medical treatment for inmates housed in the IDOC. As an employee of a company subsidized by the State of Indiana to provide medical treatment for inmates housed in the IDOC, medical staff of Wexford are subject to the same treatment and standard-of-law as medical staff employed directly by the State of Indiana, IDOC, in accordance with Indiana Code 11-10-7-4. Therefore, Defendant Nwannunu is held to the standard of Indiana Constitution Article 1, Section 15 (Unnecessary rigor for incarcerated individuals); Indiana Constitution Article 1, Section 16 (Cruel and unusual punishment); Indiana Code 11-10-3-2 (Provision of medical care); and the Eighth Amendment of the United States Constitution (Cruel and unusual punishment through the Fourteenth Amendment – <u>Robinson v. State of California</u>, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962)).

v. Defendant No. 5 – Nurse Practitioner Johnson (NP)

Nurse Practitioner Johnson ("Johnson") is an employee of Wexford, a subsidy of the IDOC con-

tracted by the State of Indiana to provide medical treatment to inmates housed in the IDOC. As an employee of a company subsidized by the State of Indiana to provide medical treatment for inmates housed in the IDOC, medical staff of Wexford are subject to the same treatment and standard-of-law as medical staff employed directly by the State of Indiana, IDOC, in accordance with Indiana Code 11-10-7-4. Therefore, Defendant Johnson is held to the standard of Indiana Constitution Article 1, Section 15 (Unnecessary rigor for incarcerated individuals); Indiana Constitution Article 1, Section 16 (Cruel and unusual punishment); Indiana Code 11-10-3-2 (Provision of medical care); and the Eighth Amendment of the United States Constitution (Cruel and unusual punishment through the Fourteenth Amendment – <u>Robinson v. State of California</u>, 370 U.S. 660, 82 S. Ct. 1417, 8 L.Ed. 2d 758 (1962)).

vi. Defendant No. 6 – Jessica Kenakham (LPN)

Jessica Kenakham ("Kenakham") is an employee of Wexford, a subsidy of the IDOC contracted by the State of Indiana to provide medical treatment to inmates housed in the IDOC. As an employee of a company subsidized by the State of Indiana to provide medical treatment for inmates housed in the IDOC, medical staff of Wexford are subject to the same treatment and standard-of-law as medical staff employed directly by the State of Indiana, IDOC, in accordance with Indiana Code

11-10-7-4. Therefore, Defendant Kenakham is held to the standard of Indiana Constitution Article 1, Section 15 (Unnecessary rigor for incarcerated individuals); Article 1, Section 16 of the Indiana Constitution (Cruel and unusual punishment); Indiana Code 11-10-3-2 (Provision for medical care); and the Eighth Amendment of the United States Constitution (Cruel and unusual punishment through the Fourteenth Amendment - Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed. 2d 758 (1962)).

vii. Defendant No. 7 - Doctor Falconer (HSA)

Doctor Faulkner ("Faulkner") is an employee of Wexford, a subsidy of the IDOC contracted by the State of Indiana to provide medical treatment for inmates housed in the IDOC. As an employee of a company subsidized by the State of Indiana to provide medical treatment for inmates housed in the IDOC, medical staff of Wexford are subject to the same treatment and standard-of-law as medical staff hired directly by the State of Indiana, IDOC, in accordance with Indiana Code 11-10-7-4. Therefore, Defendant Faulkner is held to the standard of Indiana Constitution Article 1, Section 15 (Unnecessary rigor for incarcerated individuals); Indiana Constitution Article 1, Section 16 (Cruel and unusual punishment); Indiana Code 11-10-3-2 (Provision for medical care); and the Eighth Amendment of the United States Constitution (Cruel and unusual

8

punishment through the Fourteenth Amendment — <u>Robinson v. State of California</u>, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed. 2d 758 (1962)).

### C. Prisoner Status

The Plaintiff is a prisoner confined in a state prison after a felony conviction.

### D. Statement of Facts

1. On September 11, 2019, the Plaintiff injured his foot severe enough to warrant immediate medical attention. The Plaintiff informed Officer Sturgeon that he thought his foot was broken and that he needed immediate medical attention. Defendant/Officer Sturgeon told the Plaintiff to fill out a medical health care request form;

2. On September 11, 2019 at approximately 8:50 AM the Plaintiff pushed the button on the intercom and informed the Officer in the control room of M Housing Unit ("MHU") of NCCF that he (the Plaintiff) was in serious pain and needed immediate medical attention;

3. On September 11, 2019 at approximately 9:20 AM the Plaintiff gave Correctional Sergeant Nadai a medical health care request form filled out by the Plaintiff;

4. On September 11, 2019 at approximately 9:55 AM Officer Fowler brought the Plaintiff another medical health care request form. The Plaintiff had not yet been seen by

9

medical staff.

5. On September 11, 2019 at approximately 10:02 AM, Officer/Defendant Sturgeon asked the Plaintiff what time he injured his foot and which foot the Plaintiff injured;

6. On September 11, 2019 at approximately 11:14 AM, the Plaintiff asked Officer/Defendant Sturgeon when he would be seen by medical staff, and Officer/Defendant Sturgeon told the Plaintiff that a broken limb is not a life-or-death situation and to wait;

7. On September 11, 2019 at approximately 11:30 AM, the Plaintiff was seen by medical staff, Jessica Kenakham, who scheduled the Plaintiff for an x-ray. At approximately 12:30 PM the Plaintiff was taken to the medical department of NCCF for an x-ray. Upon returning to his housing unit, the Plaintiff expressed concern about being in a cell on the top range of Pod 3 of MHU, after Defendant Kenakham gave him crutches to use, and Defendant Kenakham told the Plaintiff, "Just don't use them (the crutches) going up and down the stairs";

8. On September 12, 2019, the Plaintiff was seen by NP/Defendant Johnson for chronic care and brought up the issue of his (the Plaintiff's) injury but received no medical attention for the injury and was told by NP/Defendant Johnson that he (the Plaintiff) would have a follow-up visit for his injured foot;

9. On September 13, 2019, the Plaintiff fell from the top of

the stairs in Pod 3 of MHU all the way to the bottom (sixteen (16) concrete steps) as he attempted to navigate the stairs with an injured foot and crutches. An emergency signal was never called, however, medical staff attended to the Plaintiff where they made him lay on a flat-board on a stretcher for approximately eight (8) hours before beginning any kind of treatment. The fall injured the Plaintiff's left shoulder blade. The Plaintiff was given an x-ray by medical staff and was sent back to his housing unit. For the next week the Plaintiff could not get into or out of bed, or even use the toilet on his own accord without the help of his cellmate;

10. On September 18, 2019, the Plaintiff was seen by Doctor / Defendant Falconer (Wexford Health Services Administrator for NCCF) for the injury to his (the Plaintiff's) foot. Defendant Falconer told the Plaintiff that his hamstring ligiment in his left foot was torn, but that "...we'll call it a sprained ankle...", and the Defendant advised the Plaintiff to "walk it off" as treatment for the injury;

11. On September 19, 2019, the Plaintiff was scheduled to be seen by Nurse Practitioner / Defendant Johnson, but was refused by Defendant Johnson to be seen for medical attention as Defendant Johnson stated that Doctor Faulkner said nothing more could be done for the Plaintiff as far as treatment went, this was Defendant Johnson's rational for refusing to see the Plaintiff eventhough he (the Plaintiff) was indeed scheduled to be seen by Defendant Johnson on September 19, 2019;

12. On September 20, 2019, the Plaintiff was seen by mental health psychologist Williams concerning his mental health and how he (the Plaintiff) had continued to be mishandled by medical staff regarding his injuries. The Plaintiff expressed concerns of mental anguish to Doctor Williams and she noted the Plaintiff's concerns;

13. On October 3, 2019, the Plaintiff was finally seen by Nurse Practitioner / Defendant Johnson. Up to this point, the Plaintiff had been given nothing, outside of an injection of Tordel by Doctor / Defendant Faulkner on September 18, 2019 for immediate pain, for pain management. Defendant Johnson scheduled the Plantiff for a Magnetic resolution image (MRI) and prescribed Trilipitol for pain management. The Plaintiff did not receive the MRI;

14. On October 10, 2019, the Plaintiff was seen by Doctor / Defendant John Nwannunu to diagnose the Plaintiff's injuries. Defendant Nwannunu told the Plaintiff that nothing was wrong with the Plaintiff, but in the same turn prescribed the Plaintiff Meloxicam for pain, but the Plaintiff had to advise the Defendant of his (the Plaintiff's) medically documented gastric problems as the reason why the Plaintiff could not take Meloxicam, so the Defendant prescribed the Plaintiff Prednisone instead. If nothing was wrong with the Plaintiff, then why did Defendant Nwannunu prescribe the Plaintiff Prednisone?;

15. To this date the Plaintiff still has not received proper medical treatment for the injuries to his hamstring and shoulder blade. The Plaintiff's hamstring ligiment is still torn and has an affect on how the Plaintiff walks, and his

shoulder blade is still injured, and he continues to be in pain on a regular basis for both injuries. The Plaintiff was never schcheduled for physical therapy, and was denied such treatment when he asked Defendants Johnson, Faulkner, and Nwannunu about it

### E. Injuries

The Plaintiff sustained injuries to the hamstring ligiment of his left foot, and injuries to his left shoulder blade. Outside of the fact that the medical attention the Plaintiff eventually received was delayed by many hours, or even many days, which makes the difference between proper and improper healing, the Plaintiff requested physical therapy for his injuries, in order to initiate and sustain proper healing, from Defendants Johnson, Falconer, and Nwannunu, but the Plaintiff's requests for such treatment was denied everytime. In addition to this, it took medical staff twenty-two (22) days, after sending numerous Request For Health Care forms to medical, to prescribe the Plaintiff medicine for pain management. To this date, the Plaintiff does not walk correctly, he can no longer perform certain tasks that he was able to before his injuries, and he cannot access the use of his left arm in the same manner as he did before he fell.

### F. Relief

With respect to Defendants Nadai, Sturgeon, and Fowler, their delay in contacting medical staff for the injury to the Plaintiff's left foot, due to their reckless disregard for the seriousness of the Plaintiff's injury, amounts to nothing less than deliberate indifference

13

against the Plaintiff at the hands of these Defendants, as this delay has harmed the Plaintiff in receiving a proper healing to his injury, not to mention the physical anguish the Plaintiff endured for hours before he eventually receiving medical attention.

With respect to Defendants Nwannunu, Johnson, Falconer, and Kenakham, their delay in providing the Plaintiff with appropriate and proportionate medical treatment for the injuries to his (the Plaintiff's) left foot and left shoulder blade, due to their reckless disregard for the seriousness of the Plaintiff's injuries, amounts to nothing less than deliberate indifference against the Plaintiff at the hands of these Defendants as their reckless disregard constitutes the unnecessary and wanton infliction of pain, due to the fact that their delay has harmed the Plaintiff in receiving a proper healing to his injuries. With regard to Defendant Kenakham, not only did her delay in providing medical treatment harm the Plaintiff, but her willful neglect of at least attempting to obtain the Plaintiff a cell on the bottom range of his housing unit, which resulted in the Plaintiff falling down sixteen (16) concrete steps and injury to his left shoulder blade, amounts to reckless abandon of her duties as a licenced practicing nurse and to the potential of further harm to the Plaintiff, as well as deliberate indifference against the Plaintiff, and reckless disregard for his health and safety. With regard to Defendants Nwannunu, Johnson, and Falconer, their refusal to provide the Plaintiff with appropriate medical treatment, proportionate to the Plaintiff's injuries, amounts to deliberate indifference against the Plaintiff, the reckless disregard for his health and safety, reckless abandon of their duties as medical doctors and/or

nurse practitioners, and a continuing violation of the Plaintiff's rights to be free of pain considering the fact that it took twenty-two (22) days before the Plaintiff was prescribed any kind of medicine for sustained pain-management.

There is also a need to mention, not just the physical anguish suffered by the Plaintiff at the hands of all these Defendants collectively, but also the mental anguish suffered by the Plaintiff due to the fact that 1. he can no longer perform or act as he normally did prior to these injuries, but would be able to had he received the appropriate medical treatment proportionate to his injuries; 2. he can no longer place his trust in medical professionals who could potentially be responsible for treating serious injury to the Plaintiff or providing him with life-rescuing/sustaining proceedures or services; and 3. he can no longer expect these medical professionals to provide him with the medical treatment necessary for ongoing medical issues or medical problems he may incur in the future.

Due to the facts presented herein, the Plaintiff believes the following actions are appropriate:

1. An investigation by Wexford and the IDOC into the mishandling of the Plaintiff's medical needs;

2. Termination of the Defendants collectively, should it be determined that they were negligent in their duties and found to be in wanton and willful violation of the Plaintiffs' rights;

3. Compensatory damages to the Plaintiff in the amount of

15

seven hundred thousand dollars ($700,000.00), three hundred and fifty thousand dollars ($350,000.00) regarding the conduct of GEO employees and three hundred and fifty thousand dollars ($350,000.00) regarding the conduct of Wexford employees;

4. Punitive damages in the amount of five million dollars ($5,000,000.00), two million and five hundred thousand dollars ($2,500,000.00) regarding the conduct of GEO employees and two million and five hundred thousand dollars ($2,500,000.00) regarding the conduct of Wexford employees;

5. Any and all relief deemed appropriate and just by the Court or by a jury.

G. Exhaustion of Administrative Remedies / Procedure

1. The Plaintiff's claim arose while confined at the New Castle Correctional Facility of the IDOC;

2. The IDOC and NCCF does have a grievance procedure that covers all of the Plaintiff's claims;

3. The Plaintiff did file a grievance concerning the facts contained in this complaint at NCCF claiming inadequate medical care;

4. The Plaintiff's grievance was denied. The Plaintiff did file a grievance appeal and that appeal was subsequently

16

denied as well. The Plaintiff has exhausted all steps and requirements of the offender grievance procedure of the IDOC;

5. The Plaintiff did file a Notice of Tort for Injury with the IDOC and NCCF, in accordance with the Indiana Tort Claim Act, and was summarily denied relief by both the IDOC and NCCF. Further, the Plaintiff contacted the Indiana Ombudsman Bureau about the issues laid out in this complaint, but again received no relief.

## H. Previous Lawsuits

1. The Plaintiff has never had a lawsuit dismissed based on the "three strikes rule" of 28 U.S.C. § 1995 (g);

2. The Plaintiff has not filed other lawsuits in state or federal court dealing with the same facts involved in this action;

3. The Plaintiff has not filed other lawsuits in state or federal court otherwise relating to the conditions of his imprisonment.

## I. Certification and Closing

Under Fed. R. Civ. Pro. 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: 1.) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; 2.) is supported by existing law or by a non-

frivolous argument for extending, modifying, or reversing existing law; 3.) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentary support after a reasonable opportunity for further investigation or discovery; and 4.) the complaint otherwise complies with the requirements of Rule 11.

X 6-12-2020
Date

X David Collins
David Collins, Plaintiff

I hereby agree to provide the Clerk's office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's office may result in dismissal of my case.

X 6-12-2020
Date

X David Collins
David Collins, Plaintiff

Respectfully Submitted,

X David Collins
David Collins  DOC # 136767
New Castle Corr. Fac.
P.O. Box A
New Castle, IN. 47362-1041

18